Affirmed.

23 C.C.P.A.(Patents)

### In re WAIT.

#### Patent Appeal No. 3627.

#### Court of Customs and Patent Appeals.
#### June 1, 1936.

John C. Wait, of New York City, for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner rejecting all the claims, nineteen in number, of appellant's application for patent entitled "improvements in Process of Treating Oil and a New Product Therefrom."

Claims numbered 4, 9, and 26 are for a process; all others are directed to a product. Claims 1, 4, and 11 are regarded as fairly illustrative of the subject-matter:

"1. A new product of matter suitable for lubricating purposes which is obtained by rearranging the molecular structure of petroleum to yield a temperature-viscosity curve which has a slope which is negative at elevated temperatures as compared with lower temperatures."

"4. The process which comprises contacting an oil with an alkali metal for a

time period of less than a half an hour and at a controlled temperature between about 300° C. and about 400° C. and in a manner to rearrange the molecular structure and removing less than about 20% of the fraction of lower vapor pressure to materially decrease the viscosity at lower temperatures while retaining substantially the same viscosity at higher temperatures and to increase the viscosity index to over 150."

. "11. A composition of matter which is comprised of a mineral oil with a viscosity index of below about 100 which has been rearranged molecularly to yield a viscosity index greater than about 150 and the viscosity of which is greater than about 35 at 300° F. and which oil has a Baume gravity of between about 28 and about 30, a flash point of between about 390° F. and 450° F., a fire point of between about 450° F. and about 500° F. and a Conradson carbon value of below about 0.5%."

In general, appellant claims that by subjecting hydrocarbon mixtures, which contain impurities such as unsaturated hydrocarbons, to contact with a free metal, such as sodium, potassium, or aluminum, at a temperature within the range of 200° C. to 400° C., there is obtained a lubricating oil which possesses advantageous color characteristics, and which becomes thicker or more viscous as it becomes warmer.

The Examiner rejected all the product claims upon the ground that they are indefinite and fail to give sufficient of the characteristics of the oil, or enough of its properties, to enable it to be identified as a new and patentable article, saying:

"It is believed that since applicant has failed to give a description of his oil in standard comparisons with other oils that he really does not make a distinction over the prior art. The standards used in the art include certain tests carried out by prescribed methods, such as to be found in the Bureau of Mines Bulletin. Thus to properly identify the oil, it is believed that applicant should give the closest description of the chemical character of his oil that he can give, e. g. aromatic or paraffinic, etc. and all of the physical constants generally required in buyers' specifications, e. g. the pour point, specific gravity, carbon number, flash point and the viscosity at 210° F or 100° F, in addition to the viscosity index more specifically given and the color.

"In some of the claims the characteristics other than those of viscosity index and color are broadly stated to be those of any other oil. This is a very indefinite statement for lubricants vary widely in all properties."

The following references were cited: Hutz (German), 392,142, March 17, 1924; Hofsass, 1,729,943, Oct. 1, 1929; Cross, 1,805,686, May 19, 1931; Magill, 1,807,924, June 2, 1931; Carlisle et al., 1,862,003, June 7, 1932.

Each of the patents so cited teaches the treatment of oil with alkali metals: Cross, Magill, Carlisle et al., and Hofsass naming sodium specifically. The Board refers only to the Hofsass patent in its decision, but the other references are not overruled by it. Concerning the Hofsass patent the Board says: " * * * It is stated therein that the patentee by heating a crude California lubricating oil distillate with the addition of sodium for half an hour to a temperature of about 350° C. secures a refined product, which as regards color, odor, and other qualities, satisfies all the requirements of a good lubricating oil."

As bearing upon the product claims, the Board says of the Hofsass patent: "Since this patentee has treated mineral oils with sodium for the time and within the temperature ranges claimed by applicant, it appears that he must necessarily secure the product of applicant and the claims are considered to be unpatentable thereover."

Before us appellant filed an elaborate brief on his own behalf to which we have given careful study. To attempt a complete review of it would unduly lengthen this opinion. We shall therefore refer only to its essential points.

It is urged, among other things, that the product claims stand rejected "without any citation or evidence of prior persons having ever produced a similar oil." Even if this be granted, the fact remains that appellant does not seem to have made a sufficient showing as to the characteristics of the oil which he produces to enable a comparison of it with oils produced by others in order definitely to determine whether any person ever produced a similar oil. Even if it be assumed that it was incumbent upon the tribunals of the Patent Office to show that some one had pro-

duced an oil similar to that of appellant rather than incumbent upon him to show that he had produced an oil different from that produced by others, it certainly was required of him to make a showing full enough to enable comparison. How could it be ascertained whether "prior persons" had produced a similar oil unless it was known just what kind of oil appellant produced?

We have not overlooked the several cases cited by appellant in which, where only two elements—in some cases where only one element—of a claimed new product was recited, patents were granted and upheld by the courts, but those cases cannot be accepted as controlling here. The element or elements there given may have been quite sufficient to show something new. It must be borne in mind that appellant's process claims teach no method which is essentially distinguishable from the prior art cited against his application, and the natural presumption is that, if in the prior art the same method was used which appellant uses, the same results were obtained. What was said by this court in Re Burk, 73 F.(2d) 497, 22 C.C.P. A.(Patents) 731, is apposite here.

Appellant argues, however, that "every claim is colored by the specification," and that his claims "with one or more characterizing expressions" refer back to his specification.

It is true, of course, that claims must be supported fully, both generally and as to their limitations, by the disclosures of an application, but it does not follow from this that limitations, even though supported by the disclosure, shall be read into a claim. McCarty v. Lehigh Valley Railroad Company, 160 U.S. 110, 16 S.Ct. 240, 40 L.Ed. 358; In re Ora Krichbaum, 39 F.(2d) 280, 17 C.C.P.A.(Patents) 979; In re Irving L. Stern, 40 F.(2d) 1000, 17 C.C.P.A.(Patents) 1234. That the claim is the measure of the invention is a rule so familiar that no citation of authority in support of it is necessary. The statute itself requires that an applicant shall "particularly point out and *distinctly claim* the part, improvement, or combination which he claims as his invention or discovery." R.S. § 4888; 35 U.S.C. § 33, 35 U.S.C.A. § 33. (Italics ours.)

Appellant insists that the Board erred in considering that the principal or sole step of his process consists in contacting sodium or the like with oil at a temperature between 200° C. and 400° C. for a period of less than half an hour, and points out certain expressions in the process claims such as that of claim 4 to the effect that the metal is contacted with the oil "in a manner to rearrange the molecular structure" and that of claim 26, which requires the treatment to be "for such time that condensed vapors therefrom will have a viscosity index in excess of about 150. * * *" It seems to us that these expressions cannot be regarded as true *steps* in appellant's method, but, even if so treated, they are quite indefinite in character, and, as has been indicated, it is not thought that the public should be remitted to the specification for limitations which will render such steps clear even if such limitations may be found there, which, in this case, seems to us most doubtful.

It is learned from appellant's brief that in a copending application claims which do clearly define steps have been held "allowable." We do not think it may be argued from this, even were such copending application a part of the record here, that the claims before us are allowable. It is presumed that the steps as there defined were not found to be anticipated by prior art.

The analysis made by appellant of the several references cited in the effort to distinguish them from his own method has been examined with interest, but we fail to find where, upon the points actually material here, any patentable distinction is shown. For example, appellant says of the Hofsass patent: "Sodium applied by Hofsass is immediately and totally consumed by sulphur of the oil. None is available for further action. * * *"

Appellant then asserts that by certain figures of his (appellant's) drawings it is shown that he (appellant) "maintains a huge excess of sodium at all times. * * *" It seems sufficient upon this point to say that appellant's claims contain nothing about an "excess of sodium" or other alkali metals.

As to method, appellant's claims contain nothing which is not found in the prior art; as to the product, he fails to define it in a manner which enables a discernment of any patentable distinction between his own oil and that which the

processes of the prior art would seem naturally to produce.

We find no error in the decision of the Board of Appeals, and the same is affirmed.

Affirmed.