24 C.C.P.A.(Patents)

## In re WILLIAMS.
### Patent Appeals No. 3731.

Court of Customs and Patent Appeals.
Feb. 1, 1937.

Moses & Nolte, of New York City (Albert C. Nolte and Clarence M. Crews, both of New York City, and I. R. Paris, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge. and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant filed in the United States Patent Office an application for alleged new and useful improvements in "Absorbent Pad, Methods and Apparatus for Manufacturing Same." The appellant, in his brief, describes the subject-matter of the alleged invention here at issue as follows:

"The sanitary napkin manufactured by the claimed process and apparatus comprises a body or pad portion of absorbent material, a paper wrapper having the portions thereof which cover the bottom and the side edges of the wrapper rendered water repellant by paraffin, and a gauze wrapper which is folded longitudinally about the pad and provided with the usual end flaps extending beyond the opposite ends of the body for attaching and supporting purposes."

When the application was originally filed, it contained claims for the article. However, the office required the article claims to be divided out, and they are not involved in the present application or appeal.

The claims now on Appeal are 1, 49, 50, 53, 54, 55, 57, 58, 60, and 61. Several claims have been allowed. Of the rejected claims, claims 1, 49, 50, 54, and 55 are process claims. Claims 53, 57, 58, 60, and 61 are apparatus claims. Clams 1, 54, and 57 are thought to be typical, and are as follows:

"1. The continuous process of making sanitary pads comprising the steps of feed-

ing an absorbent web of pad material, continuously feeding a web of sheeted cellulose of at least twice the width of the absorbent web, subjecting a portion of one face of said sheeted cellulose to a waterproofing treatment, wrapping said sheeted cellulose around said absorbent web so that the waterproofed portion of said sheeted cellulose is in contact with the faces of said duplex web which are to be the bottom and sides of the finished pad to render the bottom and sides impervious to moisture while leaving the top pervious, intermittently severing portions of said duplex web, continuously feeding a web of gauze wrapping material, printing a mark on one face of said gauze wrapper, wrapping said gauze about said severed portions in such manner as to cause the printed mark to distinguish the pervious top from the impervious bottom, and intermittently severing said gauze wrapper.

"54. The method of making sanitary napkins which comprises converting finely divided material into a continuous web of filling material, endlessly delivering said web, separating individual pads successively from the leading end of the web in time with the delivery of the web, and applying wrappers to the pads successively as they are separated from the web.

"57. Apparatus for the manufacture of sanitary napkins comprising means for converting flocculent, fibrous absorbent material into a loosely felted web, a cutter for severing portions of said web, means for associating a continuous web of gauze wrapper with said severed portions, and a cutter for said gauze wrapper."

The references relied upon by the Examiner were Marcus, 1,038,493, September 10, 1912, and Haynes, 557,675, April 7, 1896.

In the statement of the Examiner, the following explanation of the rejection is given:

"Method claims 1, 49, and 50 are held to be unpatentable because they are drawn to an obvious method of making the sanitary pad disclosed, in view of the continuous manufacture of such pads as shown in Marcus. It is obvious that if a portion of a wrapper is to be waterproofed the obvious way of doing it would be to apply the waterproof material as the wrapper was being fed to the folding apparatus. In Marcus, for example, no invention would be required to merely waterproof the edges of the intermediate wrap-

per 28 if that were desired. The filler of Marcus is then cut by knife 9 and subsequently wrapped by gauze 50 and the gauze finally severed by knife 26. Obviously if the article to be produced were to be partially waterproofed and the bottom marked with suitable indicia that would be done as the pad was being made. It is common practice to provide inking rolls to print on web material, and in view thereof if it were desired to mark the web the obvious way of doing it would be to mark the web material as it was fed to the folding machine. By a mere inspection of the article it would be obvious that the filler would first be wrapped with the wrapper 42, then the proper sized pad would be wrapped with the gauze.

"Claim 53 is believed to be unpatentable over Marcus in view of Haynes. Marcus has a knife 9 for severing the pads successively, and Haynes shows the means to make a continuous web from finely divided material to be old. In view of the conventional use of continuous manufacturing machines in all arts no invention is involved in providing the means of Haynes to make the web filler used in Marcus. No unobvious result is produced thereby. The obvious advantage of a continuous web supply to avoid imperfect articles produced thereby is clearly taught in Haynes.

"Claims 54 and 55, to the method, are believed to be unpatentable over Marcus in view of Haynes, for the reasons above as to claims 53 and 54. The steps of the method are merely the combining of the steps of the processes of Haynes and Marcus. The process is merely the sum of the two processes. It is obvious to substitute the continuous manufacturing of the web as shown in Haynes for the roll of material shown in Marcus.

"Claims 57, 58, 60 and 61 are held to be unpatentable over Marcus in view of Haynes for the reasons above. Note the two cutters 9 and 26 of Marcus for cutting the filler and gauze wrapper respectively."

The Examiner's statement and conclusion were approved by the Board of Appeals, and the appellant brings the case here for consideration.

The reference patent to Haynes shows a mechanism for making bats for mattresses out of cotton or other similar material. In this patent, the ginned cotton, or lint, is drawn from an inclosure through certain rollers, and is compressed into a bat be-

tween top and bottom cloth strips, and, after being so compressed into a bat, is wound around a drum. In the method shown by the Haynes disclosure, the flocculent material is drawn from the receptacle to form a bat by practically the same process as that employed by the appellant in his device, by means of his chambers 2 and 2a. Haynes uses cotton and lint, while the appellant uses fibrated wood pulp.

In the patent to Marcus, apparatus is disclosed for making sanitary napkins from continuous rolls of material so that the same can be "quickly and accurately assembled from continuous rolls of materials, and cut into proper lengths." This apparatus is a machine for feeding, in superimposed relation, rolls of absorbent and nonabsorbent material, and the wrapping of one about the other by suitable folding means. After this is done, this continuous strip is separated into individual pads, each of which is wrapped with gauze and following which the gauze is separated so as to form the completed article of commerce. Marcus does not show a waterproofing of either side of the completed pad, or a printing of the same to designate the exterior surface.

The appellant contends that the rejection cannot properly be based upon these patents.

Much of the argument of counsel has to do with the composition and condition of the completed napkin. However, there are no article claims now in the case, and hence a consideration of the structural features of the completed pad is not material or relevant here. The article itself may be inventive and patentable, while the process may be old, or within the mechanical skill of the person constructing the same. For instance, appellant's counsel argue that the Marcus disclosure does not show a sanitary napkin having any surface impervious to moisture. This, however, in our view of the matter, is involved in a consideration of the patentability of the article and not in the method of manufacture. Again, counsel argue that the material used by Marcus as a filler is much different from that used by the appellant, and that, because of the dif-

fering condition of appellant's filling material, the processes used by Marcus could not produce a satisfactory product using appellant's filling material. As to the last suggestion, we are unable to discern wherein there is any such distinctive difference that Marcus' apparatus might not be employed to manufacture a product with the appellant's material, with such changes as might be made by a skilled mechanic.

It is true that Marcus does not disclose a method of waterproofing one side of the napkin, and does not show a marking of the same, but we agree with the Primary Examiner that it would be obvious to supply these elements as the wrapper was being fed to the folding apparatus.

A process does not become patentably new merely because it is applied to a different object or material. In re Dreyfus, 65 F.(2d) 472, 20 C.C.P.A. (Patents) 1204; In re Laughlin, 48 F.(2d) 921, 18 C.C.P.A. (Patents) 1239.

The rejected apparatus claims, namely, 53, 57, 58, 60, and 61, are broad and general, and are met and anticipated, as it seems to the court by the references. It is suggested by the Solicitor for the Patent Office that the apparatus claims of the appellant might be patentable if it appeared that a different apparatus were required than that shown by the prior art to manufacture the particular material which appellant uses, namely, fibrated wood pulp, into sanitary napkins. However, the solicitor points out that in the rejected apparatus claims, the particular kind of material to be used is not specified. This is true, except in a most general way. For instance, claim 53 recites the use of "finely divided material," claim 57 recites, "fibrous absorbent material," claim 58, "a web of padding," claim 60, "a web of filling material," and claim 61, "a web of filling material." It does not appear that any of these materials suggest inventive difference over those disclosed by the references.

We are of opinion that the Board of Appeals committed no error in rejecting appellant's claims here involved, and its decision is, therefore, affirmed.

Affirmed.