24 C.C.P.A.(Patents)

## In re WILLIAMS.
### Patent Appeal No. 3755.

Court of Customs and Patent Appeals.
May 3, 1937.

See, also, 87 F.(2d) 499.

Moses & Nolte, of New York City (Albert C. Nolte, of New York City, I. R. Paris, of Washington, D. C., and Clarence M. Crews, of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims Nos. 11, 13, 17, and 18 in appellant's application for a patent for an alleged invention relating to a process of treating woodpulp and the like.

Many uses for the pulp, treated by appellant's process, are recited in his specification, among them that of making sanitary pads, and claim 18 specifies such an article. This use was greatly emphasized in oral argument on appellant's behalf.

We quote claims 11, 13, and 18 as illustrative of the appealed claims:

"11. The process of treating wood pulp or similar material consisting in forming the wood pulp into a sheet with the individual fibres thereof relatively loosely united to each other carding the pulp, felting such carded pulp, forming said pulp into a strip, applying a material having adhesive properties and comprising a starchy material to a surface of the pulp so as to impregnate a portion only of the thickness of the strip and securing together the adhersive coated faces of two sections of such treated pulp to form a composite strip having an intermediate compacted stratum leaving the outer layers in a relatively loose and fluffy condition.

"13. The process herein described which consists in forming wood pulp into a sheet with the individual fibres thereof relatively loosely united to each other, carding such sheet, condensing such carded material to form a continuous strip of felted material and applying aqueous starch to a surface of the material.

"18. The method of making sanitary pads from wood pulp sheets having wood fibers loosely united, such sheets having a relatively high density and a relatively low absorptiveness rendering the same unsuitable for use in sanitary pads, said method comprising the steps of carding the said sheets and converting the same into an extremely light soft and fluffy material closely resembling cotton in very light condition and converting such material into a continuous strip of dimensions suitable for sanitary pads by felting the same only sufficiently to interlock the variously arranged pulp fibers to give the same a satisfactory degree of strength and rendering the said strip highly absorptive and readily disintegrable in water, then severing successive end portions of the strip to form individual sanitary pads of appropriate size."

The references are: Weiss, 1,489,567, April 8, 1924; Williams, 1,702,530, February 19, 1929; British patent, 24,183, December 16, 1914.

Although the claims are more or less self-explanatory, nevertheless, we deem it advisable to quote from the brief of counsel for appellant relative to the process here claimed: "Briefly described, the method consists in (1) subjecting woodpulp to a preliminary treatment so as to form therefrom woodpulp sheets having the individual fibers of the sheet relatively loosely united to each other * * *, (2) carding this sheet material so as to tear apart the fibers of the sheet, thus converting the pulp into an extremely light, fluffy material closely resembling cotton in very light condition * * *, (3) forming such material into a continuous strip of dimensions suitable for sanitary pads, by felting the material only sufficiently to interlock the variously arranged pulp fibers to give the felted strip a satisfactory degree of strength and to render the strip highly absorptive and readily disintegrable in water * * *, (4) spraying a surface of the strip with aqueous starch or similar material * * *, and (5) forming a duplex strip from two of the strips by placing them together so that the layer of starch intermediate the strips acts to bind the whole pad together and to give it adequate strength throughout. * * *"

It is pointed out in the brief of counsel for appellant that the appealed claims are not limited to the particular manner of treating the woodpulp, this step being covered in some of the allowed claims. It is said that the purpose of the appealed claims "is to cover the methods recited in the claims without specific limitation to the manner of the *preliminary* treatment of the pulp." (Italics ours.)

The patent to Weiss relates to insulating material made from loose fibrous material fed into a shredding machine where the fibers are separated into "individual particles" in such manner that they may be deposited upon a support to form a "flocculent layer of heterogeneously arranged" individual fibers which can be cemented together by an adhesive, and teaches that the result sought may be obtained by brushing or combing the fibers with a stiff wire brush rotating at a high rate of speed. The shredded or combed material is spread in a thin layer on a moving conveyor screen, sprayed with an adhesive agent, and subjected to a counter current of hot air. It is then coated on one or more surfaces with a substantially air-resisting and moisture-resisting material, "such, for example, as asphalt, pitch, rubber, or the like."

The British patent is for a method of producing cellulose wadding. In the process, rolls of dry cellulose pulp board, made in paper-making machines and having their fibers lying substantially parallel to one another, are utilized as the raw or starting material. The material is passed over a series of disintegrating or carding rollers, which may rotate in a direction opposite to the main rollers, and one of which preferably operates at a greater velocity than one of the main rollers. According to the patentee, this operation produces a "mass of very loose and flocky or snow like fibres. The latter are then led to a travelling transport band, from whence they will pass through pressure rollers where [by uniting the fibers] they are formed into a light fleece or fabric."

The patent to Williams, who is the applicant in the instant proceeding, was granted upon an application filed subsequent to the filing date of the involved application. Its claims are for the product resulting from the process here sought to be patented. The pad shown in the patent consists of upper and lower layers of readily disintegrating, highly absorbent material, between which layers, according to the specification, is a coating consisting preferably of "potato flour, cornstarch, tapioca, dextrine or gelatine," which causes "the adjacent surfaces of such layers to adhere."

It is argued on behalf of appellant, in substance, that Weiss was not concerned with the manufacture of sanitary pads; that the designation of asphalt, coal tar, and similar pitches, rubber, solution of gums, resins, etc., as proper adhesive agents by which the "mat" produced by the patentee can be rendered "fire-proof, rat-proof and moisture-proof" indicates how far afield the Weiss patent is from the problem confronting appellant; that the material produced by the patentee's process is not loose and fluffy, and the outer layers of his "mat" are not highly absorptive, as required by appellant's process; and that "The outstanding characteristic by which the Weiss disclosure may be differentiated from the invention

676

of the appealed claims * * * is that the practice of the Weiss method yields" an entirely different product.

█ It should be remembered that the claims here involved are directed to a process, not to an article. Accordingly, the mere fact that Weiss used a different adhesive and secured a different product does not necessarily, as stated by the Solicitor for the Patent Office, "indicate that there is any difference in the process so far as the step of using an adhesive is concerned." In re Dreyfus, 65 F. (2d) 472, 20 C.C.P.A. (Patents) 1204.

█ As to the British patent, appellant argues that it does not disclose the step of forming the woodpulp into a sheet with the individual fibers relatively loosely united to each other; that it does not disclose the step of felting the carded pulp; and that as the "loose and flocky snow like fibers" drop onto the conveyor they are merely a mass, which, after being compressed, is in the form of a "light fleece or fabric." The drawing, it is said, shows the compressed mass to be in the form of a "thin sheet."

There is nothing in the appealed claims which limits the thickness of the sheet, and we think it is clear from the method described in the British patent that when the mass of very loose and flocky snow-like fibers is placed on a traveling transport, the fibers are in sheet form, as shown in the drawings of the patent, and are relatively loosely united to each other.

In appellant's brief it is stated that "felting," as used in the appealed claims, means "felting the material only sufficiently to interlock the variously arranged pulp fibers to give the felted strip a satisfactory degree of strength and to render the strip highly absorptive and readily disintegrable in water."

We think it is clear, as stated by the Board of Appeals, that uniting fibers into a fleece or fabric, as stated in the British patent, is the equivalent of "felting," as defined in appellant's application.

Relative to appellant's own patent, it is pointed out in his brief that the application therefor having been copending with the instant application, the patent does not constitute prior art with reference to the present application. It is argued that the patent is not concerned with the manner in which the layers are made,

nor "with the steps of 'forming the woodpulp into a sheet with the individual fibers thereof relatively loosely united to each other' or the carding of the sheet," specifically described in the appealed claims, and that it could be used only for the purpose of preventing double patenting.

The Primary Examiner stated that appellant's patent discloses the "adhesion of two * * * sheets of fluffing pulp by means of starch adhesives and the granting of an additional patent on the process would have the effect of illegal—prolonging the life of his article patent," and that "Claim 18 as well as the other claims is believed to be properly rejected since so far as the laminated feature is concerned, this is covered by applicant's patent and insofar as the felt forming steps are concerned, they are old or conventional steps commonly taken to produce felts."

Each of the tribunals of the Patent Office referred to appellant's application, Serial No. 294,501, relating to a process for making the pad shown in his patent No. 1,702,530, and, with regard thereto, the Board of Appeals said: "The disclosure in said application was the same as in the patent. On an appeal to the Board of Appeals, the claims to the method were held to be unpatentable over what was claimed in the patent because they merely recited the obvious way of making pads claimed in the patent. The present application contains additional disclosure as to the preliminary steps of making the pulp into the desired form for constructing the strips from which the pads are made. The examiner holds that these steps are old in prior art patents and as they are more or less independent of what is the final article made from the prepared pulp, applicant has made no patentable advance over what he has claimed in his prior patent by employing these old preliminary steps in preparing the pulp. Applicant argues that the patents cited do not show these preliminary steps or their equivalent."

In reply to that statement of the Board, counsel for appellant state in their brief that—

"Claim 11 now on appeal differs from the subject matter refused in Serial No. 294,501 by reciting the step of "forming the woodpulp into a sheet with the individual fibers thereof relatively loosely

united to each other." This step is not disclosed in applicant's issued patent No. 1,702,530, nor was it claimed in Serial No. 294,501.

"For the reasons heretofore pointed out in discussing the patent to Weiss and the British patent, it is submitted that the 'preliminary steps' referred to by the Board of Appeals are clearly not present in the reference patents."

It would seem from the quoted statement of counsel that the only step in the involved claims not present in the claims of appellant's application, No. 294,501, is that of "forming the woodpulp into a sheet with the individual fibers thereof relatively loosely united to each other," which step appellant alleges is not disclosed in his patent.

We are of opinion, as were the tribunals of the Patent Office, that that step is clearly disclosed in the British patent.

It will be observed that claim 18 includes the additional step of "severing successive end portions of the strip to form individual sanitary pads of appropriate size." This is the only step not disclosed in the references. However, it was evidently included in the process claims of appellant's application, No. 294,-501, but, whether it was or not, it certainly does not involve invention to sever the sheet material used by appellant at the proper places to "form individual sanitary pads of appropriate size."

After describing the references of record somewhat in detail and referring with approval to the holding of the Primary Examiner, the Board of Appeals concluded its decision with the following statement: "All of the claims include the steps of forming wood pulp into a sheet with the individual fibers thereof relatively loosely united to each other carding the sheet and felting such carded pulp. We believe that the British patent shows the full equivalent of these steps. We do not believe any invention is involved in employing these steps in making the strips from which the pads are formed in applicant's prior patent."

Having already discussed the important contentions made by counsel for appellant, we deem it unnecessary to mention others set forth in their brief.

We are in accord with the conclusions reached by the Patent Office tribunals, and the decision of the Board of Appeals is affirmed.

Affirmed.