33 C.C.P.A.(Patents)

**In re SAUNDERS et al.**

**Patent Appeal No. 5141.**

Court of Customs and Patent Appeals.

April 1, 1946.

Davis, Lindsey, Smith & Shonts, of Chicago, Ill. (Glen E. Smith, of Chicago, Ill., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 7 to 12 inclusive in appellants' application for a patent for a method of and pellet for administering gonadotropic pituitary hormones. The claims, which relate to the method of administering the hormones, were rejected not only as lacking invention over the prior art but also "as being for an unpatentable method in view of the Brinkerhoff decision cited by the examiner." Claims 1 to 6, drawn to the pellet, were allowed by the examiner.

Claims 7 and 11 are illustrative of the appealed claims:

"7. A method of administering the gonadotropic fraction of the hormones of the anterior pituitary gland which consists in the subcutaneous implantation of said hormone in a desiccated condition as a dispersion of said desiccated hormone in a solid waxy medium.

"11. A method of administering the gonadotropic fraction of the hormones of the anterior pituitary gland which consists in the subcutaneous implantation of said hormone in a desiccated condition in a synthetic hydrocarbon wax having substantially the composition of 85-1/2 per cent by weight of carbon and 14-1/2 per cent by weight of hydrogen."

The reference is, Vest et al.—Journal of the American Medical Association, November 18, 1939, pages 1869 to 1872.

Omitting numerical citations to the record, appellants explain in their brief: "Briefly stated, the invention under consideration on this appeal relates to a method of administering the gonadotropic fractions of the hormones of the anterior pituitary gland, more particularly to a method which causes a very slow constant absorption of the active hormone material by the tissues, and to a pellet for use in this method of administration comprising a solid, relatively nonabsorbable preparation of these fractions, suitable for subcutaneous implantation. This pellet which consists of a dispersion of the desiccated hormone substance in a waxy medium is defined with varying degrees of particularity in the allowed claims.

The claims involved in this appeal are directed to the method of administering the hormone substance by implanting under the skin the pellet consisting of a dispersion of the desiccated hormone substance in a waxy medium."

It is noted that appellants have defined but a single step as the feature of the rejected claims in which the question of patentability resides, and that feature or step "consists in the subcutaneous implantation of said hormone." It was the only feature of these claims which was submitted for decision to the examiner and the Board of Appeals on the question of patentability, and both concurred in holding that since the method of administering appellants' hormone pellet is exactly the same as the method of administering that of the cited reference, no invention on the part of the appellants was involved in their method of administration of the material and they were not entitled to the allowance of the appealed claims.

Appellants argue here that "The method claims," which were rejected as hereinbefore noted, "definitely include by implication the step of *dispersing the hormone in a desiccated condition in the solid waxy medium* before implanting the resulting pellet under the skin or in the flesh," and that the examiner and apparently the Board of Appeals rendered their respective decisions "without giving consideration to the necessary additional step of dispersing the particular hormone, with which applicants are dealing, in a waxy medium." (Italics not ours.)

 It is elementary that an applicant for a patent is required to "particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery." See Section 4888, R.S., U.S.C.A., title 35, sec. 33. Having failed to point out and distinctly claim "the additional necessary step" hereinbefore noted as part of their invention, appellants cannot successfully contend upon the facts presented here that they have defined a critical limitation in the rejected claims by implication. See In re Crowell, 84 F.2d 206, 23 C.C.P.A. (Patents) 1246; In re Wait, 83 F.2d 696, 23 C.C.P.A. (Patents) 1172, and authorities therein cited. Neither the Primary Examiner nor the Board of Appeals considered that point and their failure so to do is not set forth as error in any of the reasons of appeal enumer-

ated by appellants. Accordingly, there is nothing involving the merit of the point presented here for review.

 Appellants further urge that the board erred in holding, "In so far as the process is concerned it is deemed to be immaterial what composition is used except that it must be in the form of a solid pellet." In passing upon the patentability of method or process claims, this court has held repeatedly that where an old method or process is used by an applicant in the administration of a new and analogous material, and the improved result is due solely to the quality of the material used, no inventive method or patentable process is involved in what the applicant has done. In re Williams, 87 F.2d 499, 24 C.C.P.A., Patents, 861; In re Dreyfus, 65 F.2d 472, 20 C.C.P.A., Patents, 1204; In re Elmyr A. Laughlin, 48 F.2d 921, 18 C.C.P.A., Patents, 1239; In re Truslow, 104 F.2d 203, 26 C.C.P.A., Patents, 1292; In re Williams, 89 F.2d 674, 24 C.C.P.A., Patents, 1175; In re Haller and Kappeler, 87 F.2d 520, 24 C.C.P.A., Patents, 887.

It is interesting to note that while appellants emphasize in their argument here that they have provided a new method by which a *particular* hormone may be administered, they point out in their specification, "Further, the value of this invention is not dependent upon the purity of the gonadotropic pituitary hormone employed, since it may be equally well applied to comparatively crude or to highly refined hormone preparations. * * * It will be understood that this invention is not limited in scope by the examples quoted herein, but is to be construed as including such equivalents as may be obvious to one skilled in the art within the scope of the appended claims."

 Upon the basis of the facts disclosed by the record, we agree with the following summarization quoted from the Solicitor's brief:

"In the present case, the appellants have secured the allowance of claims to a hormone pellet which, so far as appears, has no utility except when implanted subcutaneously; and the art shows such implantation of similar pellets to be old. Obviously, this invention was complete when the pellet was made and, given such a pellet, it could not require invention to implant it in the old manner. Any improved result is due solely to the pellet itself and not to any improved method of use. * * *

"It is submitted that the appellants have made a single invention only, and that this is adequately protected by the allowed claims. * * *"

In view of our conclusion it is unnecessary to discuss in this opinion and pass upon the further question of the rejection of the appealed claims on the ground that methods of treating the human body are not patentable.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.