Application of Guenter H. KUEHL.

Patent Appeal No. 8815.

United States Court of Customs and Patent Appeals.

March 22, 1973.

James F. Woods, New York City, attorney of record for appellant. Oswald G. Hayes, Raymond W. Barclay, New York City, John F. Witherspoon, Arlington, Va. (Stevens, Davis, Miller & Mosher), Arlington, Va., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Joseph F. Nakamura, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection for obviousness under 35 U.S.C. § 103 of claims 11, 12, and 13 in appellant's application serial No. 651,108, filed July 5, 1967, entitled "Crystalline Aluminosilicate and Method of Preparing the Same."[1] We reverse.

*The Invention*

Appellant describes his contribution to the "Useful Arts."[2] as a single invention or discovery having three aspects:

(1) Appellant has discovered and synthesized a novel zeolite identified by the symbol ZK–22 and described more fully by the following allowed claims of appellant's application:

1. A solid crystalline aluminosilicate having the composition, in its dehydrated form, expressed in terms of approximate mol ratios of oxides as follows:

$$1.0 \pm 0.2 \; [(1-x)\,[CH_3]_4\,N]_2\,O:xM_{\frac{2}{n}}\,O]:Al_2\,O_3:YSiO_2:ZP_2\,O_5$$

wherein M is selected from metal cations and positive ions and n is the valence thereof, Y is between about 2

and 7 and Z is between about 0.01 and $\frac{Y+2}{48}$, said crystalline aluminosilicate being capable of selectively sorbing straight chain hydrocarbons if the number of thermally stable cations per unit cell is 10 or less from admixture of the same with non-straight chain hydrocarbons.

6. A solid crystalline aluminosilicate according to claim 1, wherein the tetramethylammonium ion is substantially replaced by hydrogen.

Claims 1–4, 6, and 7 directed specifically to the zeolite composition stand allowed.

(2) The second aspect of appellant's invention is the method for making ZK–22, and the Patent Office has also allowed claims in this application directed thereto.

(3) What appellant describes as the third aspect of his discovery is the subject matter of this appeal: claims 11, 12, and 13, directed to a hydrocarbon conversion process which involves the *use* of appellant's novel zeolite as a catalyst to crack hydrocarbons. Appealed claim 11 reads:

11. A hydrocarbon conversion process which comprises contacting a hydrocarbon charge under catalytic cracking conditions with the composition of claim 6.

Claims 12 and 13 also call for cracking of hydrocarbons with the new zeolite catalyst material, differing only in the specific form of the zeolite catalyst employed. Instead of cracking being performed with the catalyst in a hydrogen form pursuant to claim 11, cracking according to claims 12 and 13 is performed with the catalyst in the rare earth metal form. Claims 12 and 13 are also both dependent upon allowed claims to the zeolite composition in this application. Appellant concedes that claims

---

1. The application states that it is a "continuation-in-part of copending application Serial No. 523,936, filed February 1, 1966, which is in turn a continuation-in-part of Serial No. 294,229, filed July 11, 1963, and now abandoned."

2. U.S.Const. art. I, § 8, clause 8.

12 and 13 stand or fall with our disposition of claim 11.

### The Rejection and the Issues

The sole rejection of the appealed claims is for obviousness under 35 U.S.C. § 103 in view of a single reference, Frilette patent N.. 3,033,778, issued May 8, 1962, which discloses the cracking of hydrocarbons using crystalline aluminosilicate zeolite catalysts which are similar to but patentably different from ZK–22 zeolite. Appellant admits that his zeolite is "useful in the cracking of hydrocarbons employing generally the same temperatures, liquid hourly space velocity and ratio of catalyst to hydrocarbon charge" taught by Frilette.

The examiner rejected the appealed claims "as the obvious use of the catalyst for the conversion of hydrocarbons." In his Answer, the examiner further stated that "Applicant has not shown by comparative results with such crystalline alumino silicate that he obtains *unexpected results* and it is in [the?] view of the Examiner that *in the absence of such a showing* applicant is not entitled to the use claims for the cracking of hydrocarbons." (Emphasis ours.)

The board noted that the examiner's rejection of the claims as being directed to the obvious use of the claimed aluminosilicate was "necessarily under 35 U.S.C. § 103" and agreed with the examiner that to be unobvious there would have to be a showing by appellant that the use of his admittedly novel catalyst in the hydrocarbon cracking process of Frilette gave unexpected results. The board found there was "no evidence that anything other than the usual results will be obtained when the claimed zeolites are used to crack hydrocarbons" and therefore held the appealed process claims obvious under § 103.

Appellant's position is that the process is unobvious, that the contention that appellant must show unexpected results "is based upon the premise that the use claims need be patentable over the composition claims," and that the board's approach necessarily treats appellant's own disclosure as "prior art" under 35 U.S.C. § 103, which it is not. Appellant contends further that he is entitled to claims directed to the process of using his ZK–22 zeolite, because the Patent Office found that zeolite to be new and unobvious, the hydrocarbon conversion process claims being just another method of expressing, with reasonable latitude, what appellant regards as his invention. Appellant's position here is that the claims to the process of using the new and unobvious catalyst are necessarily directed to unobvious subject matter under 35 U.S.C. § 103 and therefore allowable. Appellant's brief states:

> Where, as here, the crystalline aluminosilicate is itself unobvious, its use in catalysis is likewise unobvious. The Board of Appeals has not in this case asserted obviousness of the catalyst recited in the claims, although this constitutes the sole novelty of the claimed process. Allowance by the Patent Office of all claims in this application to the crystalline aluminosilicate as a new composition of matter is tantamount to a finding [that] the catalyst is unobvious.

The solicitor supports the view that the process invention is obvious in view of the teachings of Frilette since appellant has shown no unexpected result with the use of ZK–22 to crack hydrocarbons. He reasons as follows:

> Appellant's allowed claims 6 and 7 specify a shape-selective zeolite catalyst. His specification describes a zeolite having a three-dimensional network structure and states that it has a crystal structure similar to zeolite A. The A zeolites are pointed out by Frilette as members of the class of zeolites which, by virtue of their crystalline structure, are useful as catalysts for cracking hydrocarbons. In the light of what is disclosed by Frilette, appellant's zeolite obviously is analogous to the known zeolites of that class. One skilled in the art therefore would expect it to have the same catalytic effect that the known zeolites have.

Further, as pointed out by the Board \* \* \* there is *no evidence of any unobvious result* obtained by using the zeolites of the allowed claims in the claimed process.

With respect to appellant's argument that the board's decision, in treating the process claims, necessarily considers appellant's composition as though it were old and thus prior art under 35 U.S.C. § 103, the solicitor focuses upon the language of 35 U.S.C. § 103[3] which speaks of "the invention as a whole." He states that "Here, the 'invention as a whole' is a *process*. All of the evidence bearing on the obviousness of the *process* under section 103 must be considered." (Emphasis supplied.) The solicitor argues that the patentability of each statutory class of invention must be independently considered on its own merits in applying the test of § 103.

The solicitor continues with an explanation of the way he believes the obviousness of the appealed claims must be determined in view of several decisions of this court:

> Whether or not the composition of matter used as the catalyst in the claimed process is new or old is not necessarily controlling. In re Saunders et al, 33 C.C.P.A. 1001, 154 F.2d 693 [(1946)]. In *Saunders*, claims to a hormone pellet had been allowed in the appealed application, and this Court affirmed a rejection of claims to a method of administering the hormones by subcutaneous implantation. The Court pointed out that:

> > Obviously, this invention was complete when the pellet was made and, *given such a pellet*, it could not require invention to implant it in the old manner (Emphasis \* \* \* [by the solicitor]).

A similar rationale in analogous circumstances has been sanctioned by this Court in decisions rendered after the passage of the 1952 Patent Act. See, e. g., In re Hoeksema, 51 C.C.P.A. 1474, 332 F.2d 374; In re Albertson, supra [332 F.2d 379, 51 C.C.P.A. 1377]; In re Larsen, 49 C.C.P.A. 711, 292 F.2d 531. In *Larsen* this Court *held a process to be obvious even though it produced an unobvious product*. In *Albertson*, this Court, citing *Larsen*, held a process to be obvious even though both the final product and the starting material were unobvious.

Finally, the solicitor takes issue with appellant's contention that "appellant's process-of-use claims should be allowed because he is entitled to 'reasonable latitude' in claiming what he regards as his invention." The solicitor states that the reasonableness of claiming latitude was properly determined by the board's finding that process of use claims are a "reasonable restatement of the invention if the process of use reflects an unexpected utility of the allowed composition."

## OPINION

The arguments of both appellant and the solicitor make much of the facts that there are allowed claims in the application to the zeolite and that the appealed claims represent the *method of using* the zeolite, a different statutory class of invention.

Appellant states as a broad proposition that the allowance of the composition claims here *necessarily* entitles him to claims in the same application directed to the method of using the zeolite, which the Patent Office found to be a new and unobvious composition of mat-

3. This statute reads as follows:

§ 103. *Conditions for patentability; nonobvious subject matter*

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

ter. We think this proposition is too broadly stated. See In re Albertson, 332 F.2d 379, 51 C.C.P.A. 1377 (1964). The unobviousness of the herein claimed method of cracking hydrocarbons using ZK–22 must be judged by applying to the facts of this case the statutory standard for unobviousness of § 103.

In Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), the Supreme Court construed the § 103 standard of obviousness as follows:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill· in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

■ The issue here concerns primarily the meaning of the terms "prior art" and "subject matter as a whole" in § 103, and specifically whether appellant's zeolite composition is in any way to be considered as "prior art" for the purposes of applying the statute. Appellant says that the board's decision holding the claims to the method of using the zeolite obvious in view of Frilette "necessarily utilizes as 'prior art' appellant's own disclosure" of the zeolite. To the extent that the board may have affirmed the examiner's view that the process claims represented "the obvious use of the [ZK–22] catalyst for the conversion of hydrocarbons," this appears to be the case. The examiner's language does appear to treat incorrectly the ZK–22 zeolite as part of the prior art. The correct application of the test of § 103 requires that the claims on appeal not be judged against any prior art other than Frilette.

In In re Prater, 415 F.2d 1393, 56 C.C.P.A. 1381 (1969), we considered the meaning of the "subject matter as a whole" as well as the fact that § 103 requires consideration of obviousness "at the time the invention was made." Dis-

cussing the invention, we said "The invention includes both a method and apparatus." In considering the obviousness of apparatus claim 10, we said:

> Appellants' discovery, discussed in the second paragraph under the heading "THE INVENTION," supra, is, it seems to us, part of *their contribution to the art*. On that basis, appellants' discovery should be considered as part of *"the subject matter as a whole"* and *not* part of the prior art. It is conceded by the Patent Office that that discovery is both new and unobvious. Thus, *based on the record before us*, we do not perceive any reasonable basis for concluding that "the subject matter as a whole," as defined by apparatus claim 10, would have been obvious at the time of appellants' invention.

We have carefully considered the basic position of the Patent Office that it would be obvious to program a general-purpose digital computer to practice appellants' invention and that apparatus claim 10 reads on such a computer, as well as the disclosed analog device. We find that position fatally defective in that it, in effect, assumes the existence *as prior art* of appellants' discovery * * *. Perhaps today, *after* reading appellants' disclosure, the public dissemination of which the patent system fosters and encourages, it might be obvious to program a general-purpose digital computer to practice the invention. But 35 U.S.C. 103 requires an analysis of the prior art *at the time the invention was made* to determine whether the invention was obvious. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Assuming the existence, at the time of the invention, of general-purpose digital computers as well as typical programming techniques therefor, it is nevertheless plain that appellants' invention, as defined in apparatus claim 10, was not obvious under 35 U.S.C. 103 because one not having knowledge of appellants' discovery simply would not

know what to program the computer to do. See Ex parte King, 146 USPQ 590 (Pat.Off.Bd.App.1964). [415 F. 2d at 1405, 56 C.C.P.A. at 1397–1398.] Similarly here, the process "invention as a whole" includes the use of the ZK–22 zeolite and one having no knowledge thereof would not find it obvious to crack hydrocarbons using it as a catalyst. To the extent, therefore, that the examiner and the board held appellant's process-of-use invention to a more stringent standard of unobviousness by requiring appellant to show unexpected results in the use of ZK–22, as compared to the use of other zeolites in cracking hydrocarbons, in order to be "entitled to the use claims," we consider that they erred.

The only prior art of record is Frilette and we must therefore determine the obviousness or unobviousness of the process invention in view of the disclosure of this reference.

### Unobviousness in View of Frilette

Frilette discloses a class of crystalline zeolites useful as catalysts for cracking hydrocarbons, and described as crystalline metal aluminosilicates, known as molecular sieves, which have catalytic capabilities by virtue of their three-dimensional network structure made up of unit cells and a "geometric selectivity" dependent upon the relationship between the diameter of ports in the zeolite's crystal structure and the diameters of the reactant and product molecules. Frilette specifically teaches molecular sieves of the "A" series as being members of the class of zeolites which are useful as catalysts for cracking hydrocarbons.

■ ZK–22 is not so similar to the zeolites of the "A" series identified by Frilette as to render the use of ZK–22 to crack hydrocarbons, albeit in the *manner* used by Frilette, obvious to one of ordinary skill in the art. ZK–22 is not a homologue, isomer, or chemical analogue of series "A" zeolites. Nor do Frilette's teachings of zeolites broadly

define a class, the knowledge of which would render ZK–22 or its use as a catalyst obvious. Furthermore, the differences therebetween appear significant. As appellant's specification correctly notes, ZK–22 has a higher "silica to alumina mol ratio," and "contains intercalated phosphate when crystallized from its reaction mixture." All of these differences are uncontradicted by the Patent Office, the solicitor maintaining only generally that:

> The A zeolites are pointed out by Frilette as members of the class of zeolites which, by virtue of their crystalline structure, are useful as catalysts for cracking hydrocarbons. In light of what is disclosed by Frilette, appellant's zeolite obviously is analogous to the known zeolites of that class. One skilled in the art therefore would expect it to have the same catalytic effect that the known zeolites have.

Not only are the zeolites of series "A" structurally different from appellant's ZK–22, but the test is not whether one "would expect it to have the same catalytic effect that the known [series "A"] zeolites have," but whether it would have been *obvious* to one skilled in the art to *use* ZK–22 to crack hydrocarbons.

### The Prior Cases

As noted earlier, the solicitor contends that prior decisions of this court are controlling on the facts here. He maintains that In re Saunders, 154 F.2d 693, 33 C.C.P.A. 1001 (1946), and In re Albertson, 332 F.2d 379, 51 C.C.P.A. 1377 (1964), mandate affirmance.

*Saunders* was decided prior to the 1952 Act, which inserted § 103 into the statutory law for the first time and made it clear that the test is obviousness of the *invention as a whole* to a person of ordinary skill in the art *at the time the invention was made*. *Saunders*, moreover, does not rest upon the firmest foundation. Of the six cases cited therein for the broad proposition relied on that "where an old method or process is used by an applicant in the adminis-

tration of a new and analogous material, and the improved result is due solely to the quality of the material used, no inventive or patentable process is involved in what the applicant has done," four of these cases dealt with a situation where the claimed process was a method of *making*, not using, the allegedly new material: In re Williams, 87 F.2d 499, 24 C.C.P.A. 861 (1937); In re Dreyfus, 65 F.2d 472, 20 C.C.P.A. 1204 (1933); In re Truslow, 104 F.2d 203, 26 C.C.P.A. 1292 (1939); and In re Williams, 89 F. 2d 674, 24 C.C.P.A. 1175 (1937). The other two cases are In re Laughlin, 48 F.2d 921, 18 C.C.P.A. 1239 (1931) and In re Haller, 87 F.2d 520, 24 C.C.P.A. 887 (1937). *Laughlin* was a double patenting case, not an obviousness case.[4] *Haller* involved a rejection for "lack of patentability in view of the patent to Baekeland." This case does seem to support the broad proposition of *Saunders* as argued here.[5] However, it should be noted that Haller et al.'s novel resin composition, which was used in the

impregnation process claimed, was not claimed in the application on appeal but had been patented previously. Today in that situation we too would have problems with that case, but from a *double patenting* standpoint—giving Haller et al. a patent on a method of using their patented composition without a terminal disclaimer to prevent extension of the monopoly of the patent on the composition. The case here is different, however, since the method-of-use claims are in the same application with the composition claims and they will all expire together.

Returning to *Saunders* itself, we think the case no longer represents viable law to the extent that it supports the broad proposition that the obviousness of process claims drawn to a method of using a composition is determined by asking, in the fashion of the court in *Saunders*, whether *"given" the composition* the claimed process of use would be obvious.[6] The test under § 103 is

---

4. Further, the claims at issue covered a method for treating metal castings and the appellant had a *patent* on a *method* of treating car wheel metal castings.

5. The court in *Haller* said:
It appears to us that appellants have merely used a product invented by them, and *for which they have received a patent*, and have impregnated material with such a product, followed by steps of elimination of acid, washing and drying disclosed by Baekeland. We can see nothing inventive in merely bringing material to be impregnated into contact with appellants' new product. While the decisions of the Patent Office tribunals are not very clear upon this point, we construe them to mean that, regardless of any differences between appellants' process and that of the reference Baekeland, there was no invention involved in the use of appellants' novel product, followed by conventional steps to eliminate the mineral acid, washing, and drying. (Emphasis ours.)

6. In re Saunders has been cited by this court five times, all prior to the 1952 Act, but we do not believe any of the cases citing it support the solicitor's position on the facts here. In re Haney, 158 F.2d 296, 34 CCPA 767 (1946); In re Teter, 158 F.2d 1007, 34 CCPA 797

(1947); In re Gardner, 164 F.2d 363, 35 CCPA 753 (1947); In re Freedlander, 168 F.2d 535, 35 CCPA 1209 (1948); and In re Craige, 189 F.2d 620, 38 CCPA 1114 (1951). In *Craige*, for example, this court quoted what it referred to later as the "rule of the *Saunders* case" as follows:
It is further well settled that the substitution of a new and analogous material in an old method or process does not render the process patentable where the improved result is due solely to the quality of the material used. In re Saunders et al. * * *.
The court then went on to do exactly what we do here, that is, apply the art cited to determine if the method claim was obvious thereover. In doing so, even without the guidance of § 103 of the 1952 Act, the court found that the compositions used in the method of the claim were not only homologues and analogues of prior art compounds, and themselves unpatentable where separately claimed, but that the method of use invention was obvious. The converse is true here where the Frilette reference does not teach a homologous or analogous relationship of ZK–22 to the prior art such as might make the composition, let alone the method, obvious to one skilled in the art.

whether in view of the prior art the invention as a whole would have been obvious at the time it was made, and the prior art here does not include the zeolite, ZK–22. The obviousness of the process of cracking hydrocarbons with ZK–22 as a catalyst must be determined without reference to knowledge of ZK–22 and its properties. So judged, the process of the appealed claims would not have been obvious.

■ The solicitor also asserts that a rationale similar to that he finds in *Saunders* has been sanctioned by this court in decisions rendered after the effective date of the 1952 Act in "analogous circumstances." The alleged analogous circumstance is where the court or the Patent Office has found that a composition or product is new and unobvious but has refused to allow claims to the *process for making* the unobvious product. The cases are In re Larsen, 292 F.2d 531, 49 C.C.P.A. 711 (1961); In re Hoeksema, 332 F.2d 374, 51 C.C.P.A. 1474 (1964); and In re Albertson, *supra.* The solicitor maintains by this reasoning that the claims calling for a *process using* an unobvious composition ought to be treated identically with claims calling for the process of making an unobvious composition. We disagree. The test of unobviousness is a statutory test and requires comparison of the invention with the prior art in each case, whether the invention be a process for making or a process of using, or some other process. We fully agree with the solicitor that "each statutory class of claims must be considered independently on its own merits" and likewise feel that each category of *process* claims must be similarly considered. No one rule controls them all.

While there may be some distinction between the *Larsen* line of cases which deal with the obviousness of a process of making a composition and the *Saunders* case, the principal opinion in *Larsen* also appears to have erroneously approached the § 103 obviousness question by asking whether "*given* the idea of the compound" (our emphasis) the process for

making it is obvious (see MPEP § 706.-03(q)). To this extent, at least, *Larsen* and its progeny, *Hoeksema* and *Albertson,* are inconsistent with the statutory standards of § 103.

Secondly, we do not read *Larsen* as ruling that an applicant *cannot* have claims to the method of making an admittedly novel product, but only that such an applicant does not get such claims just because the product is new and unobvious. In In re Neugebauer, 330 F.2d 353, 51 C.C.P.A. 1138 (1964), we considered the obviousness of claims for a method of making an electrophotographic material by a single step coating process, where claims were allowed to the electrophotographic material. The court considered the claimed invention in view of the prior art cited and held the invention obvious. In *Neugebauer,* *Larsen* was relied upon to controvert an allegation of the appellant there that the fact that he had allowed claims to the electrophotographic material entitled him to claims to the method of making it. We said:

We agree with the board. Appellants' coating process appears to be conventional and therefore obvious. The fact that the final product is novel is not controlling of obviousness of the method. In re Larsen * * *.

We say the same thing here, noting that allowability of the composition claims does not mandate reversal of the § 103 rejection.

In re Albertson, *supra,* is not inconsistent, that case stating the general proposition that "We must consider 'the differences between the subject matter sought to be patented and the prior art' under 35 U.S.C. 103." The solicitor correctly states that "In *Albertson,* this Court, citing *Larsen,* held a process to be obvious even though both the final product and the starting material were unobvious." The process invention there, however, was characterized as reducing the new starting material, A, with a well-known agent for reducing any compound having the characteristic

reducible group, which the starting material had. The *Albertson* holding does not imply that all such processes are necessarily obvious, only that on the facts there and in view of the prior art of record the invention was obvious. The opinion says:

> Even though no one ever produced A before, we are not satisfied that it is unobvious to reduce A with a standard reducing agent to produce reduced A. No reaction conditions are recited in the claims. No manipulative steps are claimed other than what is embodied in the word "reacting," which is used in all of the claims. The results obtained by reacting with alkali metal aluminum hydride are entirely expected and obvious. Only the predicted reduction takes place.
>
> \*    \*    \*    \*    \*    \*
>
> We do not agree with appellant's proposition that the "use of an unobvious starting material renders a process unobvious." Were this true, every step, for example, dissolving or heating, when performed on a new compound would result in a patentable process. We reiterate that all of the evidence must be considered on the "subject matter as a whole," from the viewpoint of one skilled in the art, in the determination of obviousness, and not simply the patentability of one of the starting reactants in a process.
>
> In view of the prior art, we see nothing unobvious in reacting the compounds of the allowed claims with a reducing agent to produce the reduced derivatives. [332 F.2d at 381, 51 C.C.P.A. at 1381.]

We note that in the present case the novel catalyst, ZK–22, is not merely itself reduced by a well-known reducing agent but itself catalyzes the hydrocarbon charge in the claimed process, a result that was not predictable until appellant had made his invention.

■ Finally, the solicitor takes issue with appellant's contention "that his process-of-use claims should be allowed because he is entitled to 'reasonable latitude' in claiming what he regards as his invention." Appellant maintains that "hydrocarbon conversion" is "the very purpose behind research directed to the synthesis of novel catalyst substances" and that the method-of-use claims represent part of what "applicant regards as his invention." (See 35 U.S.C. § 112, second paragraph.) The solicitor says the question here "is what is a reasonable restatement of the invention" and he concludes, with the board, that the process-of-use claims are a reasonable restatement only "if the process of use reflects an unexpected utility of the allowed composition."

We disagree with both premise and conclusion. The rejection here is under § 103 and the obviousness of the claimed process does not depend upon whether the claims are "a reasonable restatement of the invention." We have concluded, for reasons stated above, that the process-of-use claims are patentable and that it was not necessary to show unexpected utility in order to show unobviousness. We would add, moreover, that in our view it is in the public interest to permit appellant to claim the process as well as the product. The result is to encourage a more detailed disclosure of the specific methods of using the novel composition he has invented in order to have support for the process claims.

■ We believe the constitutional purpose of the patent system is promoted by encouraging applicants to claim, and therefore to describe in the manner required by 35 U.S.C. § 112, all aspects of what they regard as their inventions, regardless of the number of statutory classes involved. The dependent claims on appeal to the use of the new zeolite in the same application with the composition claims do not materially increase the scope of protection of his inchoate patent property under 35 U.S.C. § 154, which already includes the right to exclude others from making, *using*, or selling the composition by allowance of claims thereon, but they do tend to increase the wealth of technical knowledge disclosed in the patent by encouraging

description of the use aspects of his invention in the manner required by 35 U.S.C. § 112, paragraph 1.

For the foregoing reasons, the rejection of claims 11, 12, and 13 is reversed.

Reversed.