**Application of Mamoru HIRAO and Yoshinori Sato.**

**Patent Appeal No. 76–560.**

United States Court of Customs and Patent Appeals.

May 27, 1976.

Roger L. Browdy, Silver Spring, Md., atty. of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, LANE and MILLER, Associate Judges, and ALMOND, Senior Judge.

MILLER, Judge.

This appeal is from the decision of the Patent and Trademark Office Board of Appeals affirming the rejection of claims 1–4, 10, 17–19, 21, 22, and 24–26 in application serial No. 839,689, filed July 7, 1969, for "Process for Preparing Food and Drinks." We reverse.

### The Invention

The invention involves a process of sweetening foods and drinks. The process comprises three steps, the first two being a method of forming a high purity maltose product (which is the sweetening agent) and the third being the use of this product to sweeten the food or drink. Claim 1, the sole independent claim, is illustrative (paragraphing and numbering added):

1. A process for preparing foods and drinks sweetened mildly, and protected against discoloration, Strecker's reaction, and moisture absorption, which comprises:

    ■ adding α –1,6–glucosidase and β amylase, under such conditions and in a quantity sufficient to produce straight chain amylose, to enzymatically liquefied starch which consists essentially of amy-

lopectin thereby producing straight-chain amylose;

█ subjecting the resulting amylose to the action of β–amylase and purifying and drying to obtain high purity maltose in crystalline powder form of 90–95% maltose; and then

█ adding said high purity crystalline maltose powder to foods and drinks as the essential added sweetener.

### The Board's Opinion

The board, in a new ground of rejection under 37 CFR 1.196(b), found that all of the claims now before the court would have been obvious under 35 U.S.C. § 103 in view of Jacobs (Jacobs, *Chemistry and Technology of Food and Food Products* 67–70 (1951)) together with Kjolberg (Kjolberg et al., *Studies on Carbohydrate Metabolizing Enzymes*, 86 J. Biochemistry 258–62 (1963)). (The references are discussed *infra* under "*Agreed Statement.*") The board stated:

We wish to make it clear that while appellants' method of making high purity maltose appears to be unobvious based on the art of record before us, the method of sweetening food products with high purity maltose would be obvious from the teaching of Jacobs in view of Kjolberg.

In response to a request for reconsideration, the board further stated:

We note that appellants concede that the method of sweetening food products with high purity maltose would be obvious from the teachings of Jacobs in view of Kjolberg et al. As to claim 1, it is our considered opinion, that, regardless of the process employed in preparing high purity maltose, it is obvious to use such high purity maltose in sweetening food products.

1. See *In re Hirao*, 525 F.2d 1066, 188 USPQ 248 (Cust. & Pat.App.1975).

2. Rule 5.5:
   When the questions presented by an appeal to this court can be determined without an examination of all the pleadings, evidence, and proceedings below, the parties may submit an agreed statement of the case in lieu of the record as required by Rule 3.3(b) showing: (1) how the questions arose and were

### Agreed Statement

This appeal comes before the court on an agreed statement of the case [1] under court Rule 5.5.[2] The following facts, among others, have been stipulated:

9. Claim 1 is an independent claim on which each of the remaining appealed claims depends, directly or indirectly.

10. The rejection of dependent claims 2 to 4, 10, 17 to 19, 21, 22 and 24 to 26 will stand or fall with the rejection of claim 1.

11. The sole issue to be decided by the present appeal is whether claim 1, and all those claims dependent therefrom, are obvious in the sense of 35 USC 103 over Jacobs in view of Kjolberg.

. . . . .

13. The Kjolberg reference teaches one process of making high purity maltose.

14. The Jacobs reference generally teaches that certain undefined maltose products may be used for sweetening food products.

15. Appellants' steps of making high purity maltose, which appear as the first two steps in claim 1 . . ., are novel and unobvious based on the art of record.

16. Appellants' step of adding high purity maltose to foods and drinks as the essential added sweetener, which appears as the third step in claim 1, . . . would be obvious from the teachings of Jacobs in view of Kjolberg.

### OPINION

As stipulated, the first two steps (forming high purity maltose) would have been unobvious from the art of record, while the

decided in the tribunal from which the appeal is taken; (2) the facts averred and proved or sought to be proved which are essential to a decision of the questions by this court; and (3) a concise statement of the issues to be decided and the points to be relied on by appellant. The statement shall be accompanied by a certified copy of the judgment or ruling appealed from and a certified copy of all opinions, if any, in support thereof.

third step (using high purity maltose as a sweetener) would have been obvious in view of Jacobs together with Kjolberg. Moreover, the Solicitor has stated—without contravention by appellants—that the high purity maltose product formed by the first two steps and the high purity maltose product of the prior art "may be considered the same as far as the process and use recited in the preamble and step [3] of claim 1 are concerned." Thus, the single issue is whether appellants' three-step process is obvious, the first two steps being unobvious but forming a known product, and the third step being the use of this known product in an obvious way. We conclude that due to the admitted unobviousness of the first two steps of the claimed combination of steps the subject matter *as a whole* would not have been obvious to one of ordinary skill in the art at the time the invention was made. *Cf. In re Mancy*, 499 F.2d 1289, 182 USPQ 303 (Cust. & Pat.App.1974); *In re Kuehl*, 475 F.2d 658, 177 USPQ 250 (Cust. & Pat. App.1973).

The Solicitor argues that *Kuehl* and its progeny (including *Mancy*) are distinguishable, "inasmuch as the Court was there concerned with the obviousness of processes of *using unobvious* products," while here "the person of ordinary skill in the art has already been given the obvious, high purity maltose produced by other processes." However, this factual distinction does not preclude the applicability to the present case of the reasoning of *Kuehl*, where this court said (*supra* at 664–65, 177 USPQ at 255):

> [W]e think [*In re Saunders*, 154 F.2d 693, 33 CCPA 1001, 69 USPQ 341 (1946)] no longer represents viable law to the extent that it supports the broad proposition that the obviousness of process claims drawn to a method of using a composition is determined by asking . . .

whether *"given" the composition* the claimed process of use would be obvious. The test under § 103 is whether in view of the prior art the invention as a whole would have been obvious at the time it was made, and the prior art here does not include the zeolite [the unobvious composition used]. . . . [Footnote omitted.]

Similarly here, it is improper to determine obviousness by merely asking whether, given the product of the two unobvious claimed steps, the third claimed step of using the product would have been obvious. The obviousness of the invention *as a whole* must be determined, and the unobvious first two steps are clearly part of the invention as a whole.

The Solicitor urges that the board committed no error in refusing to give weight to the specific method of making the high purity maltose. He analogizes the present claims to product-by-process claims, stating that "claim 1 may properly be viewed in short hand [sic] form as a 'process of using a product-by-process' claim," and argues that the method limitations of the first two steps should be given little or no weight. A product-by-process claim, although reciting the subject matter of the claim in terms of how it is made, is still a product claim. As this court said in *In re Brown*, 459 F.2d 531, 535, 59 CCPA 1036, 1041, 173 USPQ 685, 688 (1972):

> [I]n spite of the fact that the claim may recite only process limitations, it is the patentability of the *product* claimed and *not* of the recited process steps which must be established.

Here, a three-step process is claimed—not the product formed by two steps of the process or the third step of using that product. Thus, the analogy to product-by-process claims is inapposite.[3]

---

**3.** At oral hearing, the Solicitor pointed out that some courts in infringement suits have construed product-by-process claims as covering *only* a product made by the particular process set forth in the claims (see *In re Bridgeford*, 357 F.2d 679, 682 n. 5, 53 CCPA 1182, 1186 n. 5, 149 USPQ 55, 58 n. 5 (1966)), and argued that these courts would treat the "process of using a product-by-process claim" and the present claims in the same manner. This court, however, as recognized by the Solicitor, does not construe product-by-process claims in an ex parte case as limited to the product formed by the specific process recited. *In re Avery*, 518 F.2d 1228, 186 USPQ 161 (Cust. & Pat.App. 1975). If it did, the Solicitor's analogy to product-by-process claims would fall under its own weight.

The Solicitor points to the preamble of claim 1, which recites a "process for preparing foods and drinks sweetened mildly," as showing that the subject matter as a whole involves the use of an old sweetening agent in a very obvious manner. However, the preamble merely recites the purpose of the process; the remainder of the claim (the three process steps) does not depend on the preamble for completeness, and the process steps are able to stand alone. See *Kropa v. Robie*, 187 F.2d 150, 38 CCPA 858, 88 USPQ 478 (1951). The Solicitor's interpretation of the preamble would improperly *broaden* the scope of the claim.

In view of the foregoing, we hold that the subject matter as a whole would not have been obvious at the time the invention was made.

The decision of the board is *reversed*.

*REVERSED.*