**In the Matter of the Application of Jean E. MAUCORPS.**

**Appeal No. 79-554.**

United States Court of Customs and Patent Appeals.

Nov. 1, 1979.

William R. Woodward, New York City, atty. of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents and Trademarks, Thomas E. Lynch, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, and MILLER, Associate Judges, and WATSON, Judge.*

MARKEY, Chief Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) affirming the rejection under 35 U.S.C. § 101 of claims 1–5 and 7–13 of application serial No. 536,839, filed December 27, 1974, entitled "Computing System for Optimizing Sales Organizations and Activities." We affirm.

### The Invention

Appellant's invention is a computer-implemented model of a sales organization. It determines the optimum number of times a sales representative for a business should visit each customer over a period of time. The optimum number of sales representatives the organization should have, and the optimum organization of sales representatives.

Based on experimentation with a South African sales organization, appellant determined that in South Africa, the basic sales unit supervised by a sales manager should have no more than four sales representatives. The established rule is that a single person cannot effectively control more than seven subordinates. Appellant concluded that the discrepancy was due to the greater mobility of sales representatives in South Africa, and developed a generalized equation, recited in means (a) of claim 2, which takes mobility into account. With that equation established, appellant proposed and studied various model sales organizations to determine the value of the control factor "gamma" ($\gamma$),[1] and developed equations for the different types of sales units in an organization. A circuit for calculating the control factor $\gamma$ for one type of organization is recited in equation form as means (b) of claim 2.

Ultimately, appellant's invention is directed toward optimizing the organization of sales representatives in a business. Using the equations and data described in the specification, appellant arrives at the optimum business organization. Claim 1, the only independent claim, is illustrative:

1. A computing system for processing data to determine an optimum "coding", defined as the number of regular visits over a predetermined period of time, Pd, by a business representative to a client, to be selected for such client, comprising:

(a) means for calculating for each different value of x representing the coding of clients, a value for y representing the sales arising over said predetermined period of time from the representative's activity when x 3 in accordance with the relation given by

$$y = D\left\{(1-G_1)^x + K(x-1)(1-G_1)^{x-2} - \frac{K^2}{2G_1}(x-2)(1-G_1)^{x-4}\left[2-(x-1)G_1\right] + \frac{K^3}{3G_1^2}(x-3)(1-G_1)^{x-6}\left[3-3(x-2)G_1 + \frac{1}{2}(x-1)(x-2)G_1^2\right] + \ldots\right\}$$

in which

$G_1 = M(0.5054 + 0.1930 \log x)$

$K = 0.0581\ M$

$D$ = Client's total demand over said period

$M$ = "memory factor", i. e. retention after 24 hours, the values of x and the corresponding values of y defining a "saturation curve" of sales;

(b) means for calculating, for the value of $x = 1$ representing the coding of clients, a value for y representing the sales arising over said predetermined period of time from the representative's

---

* Judge James Watson, of the United States Customs Court, sitting by designation.

1. The control factor is related to the costs of maintaining a sales representative.

activity in accordance with the relation by $y = D(1-G_1)$;

(c) means for calculating for the value of $x = 2$ representing the coding of clients, a value for y representing the sales arising over said predetermined period of time from the representative's activity in accordance with the relation given by $y = D[(1-G_1)^2 + K]$;

(d) means for calculating for each different value of x a value for y where

$$y = x \; \frac{C(1 + \gamma) \quad (1 - \alpha)}{\beta \; TN}$$

in which

$C$ = direct cost over said period of a representative RE

$\alpha$ = additional visits/systematic visits factor

$\beta$ = percentage of gross profits on sales

$T$ = visiting times (days)/periods of time/representative

$N$ = number of visits/day/representative

$\bar{\gamma}$ = "control factor", i. e. the cost C' over said period of controlling a representative divided by the direct cost C of that representative,

the values of x and the corresponding values of y defining a "minimum sales line" which intersects the saturation curve at a point defined as the "critical point", and

(e) means responsive to the output of said calculating means for selecting a value of x as a client's coding for which the value of y corresponding to the sales over said period arising from the representative's activity provides a "representative point" P having as coordinates x and y, such that said point P is above the minimum sales line and the saturation curve and as close to the latter as possible, each of said calculating means including electric circuits constituted so that when said electric circuits are in an activated state, values of y are automatically calculated upon receiving the necessary input data regarding the above-defined variables, and said value selecting means likewise including electric circuits constituted so that, when said selecting means is in an activating state, a value of x will be automatically selected upon said means receiving the necessary minimum sales line and saturation curve data.

The invention is implemented via a computer program written in FORTRAN IV, either built into the calculating machine, or loaded into a general purpose computer. The program is listed in Table (87) of the specification. In the system corresponding to Figs. 32 and 33, the program is permanently built into the machine, data are entered via teletypewriter, and output is printed via teletypewriter.

*FIG. 32*

FIG. 33

The system, as shown in Figs. 32 and 33, comprises a processor 100, read-only memory (ROM) 500, random access memory (RAM) 600, and auxiliary sequencing and interconnecting circuitry including clock circuit 200, state decoder 300, address register 400, input/output (I/O) decoder 700, teletypewriter entry circuits 800, 801, and 802, teletypewriter status circuit 900, teletypewriter printer circuits 1000, 1001, and 1002, interrupt/jam logic circuit 1100, and bus and 79-554, memory timing logic circuit 1200. ROM 500 contains the equivalent in processor machine language of the FORTRAN program. RAM 600 stores the data for each problem.

The apparatus shown in Figs. 32 and 33, except for circuits 800, 801, 802; and 900, constitute the "means for" of claim 1.

### The Rejection

The examiner rejected the claims under 35 U.S.C. § 101 as being drawn to non-statutory subject matter. Citing *Gottschalk v. Benson,* 409 U.S. 63, 93 S.Ct. 253, 34 L.Ed.2d 273, 175 USPQ 673 (1972) (hereinafter *Benson*), he stated that "[t]he program or algorithm involved here has no substantial practical application except in connection with a digital computer." Respecting appellant's argument that the instant claims are drawn to apparatus while those in *Benson* were drawn to a process, the examiner reasoned that the form of the claim is immaterial under *Benson,* and that appellant should not be allowed to achieve by indirection what he could not achieve directly.

The examiner concluded that neither decisions of this court subsequent to *Benson* —specifically, *In re Noll,* 545 F.2d 141, 191 USPQ 171 (Cust. & Pat.App.1976), *cert. denied,* 434 U.S. 875, 98 S.Ct. 226, 54 L.Ed.2d 155, 195 USPQ 465 (1977); *In re Chatfield,* 545 F.2d 152, 191 USPQ 730 (Cust. & Pat. App.1976), *cert. denied,* 434 U.S. 875, 98 S.Ct. 226, 54 L.Ed.2d 155, 195 USPQ 465 (1977); *In re Richman,* 563 F.2d 1026, 195 USPQ 340 (Cust. & Pat.App.1977); *In re de Castelet,* 562 F.2d 1236, 195 USPQ 439 (Cust. & Pat.App.1977); and *In re Freeman,* 573 F.2d 1237, 197 USPQ 464 (Cust. & Pat. App.1978)—nor the Supreme Court's decisions in *Parker v. Flook,* 437 U.S. 584, 98 S.Ct. 2522, 57 L.Ed.2d 451, 198 USPQ 193 (1978) (hereinafter *Flook* ), *rev'g In re Flook,* 559 F.2d 21, 195 USPQ 9 (Cust. & Pat.App.1977), required a different result.

The board affirmed the examiner's rejection, agreeing with the examiner that "the

holdings and opinions expressed by the [Supreme] Court in *Benson* and *Flook* apply to appellant's invention whether it is claimed as an apparatus or as a process."

Applying the two-step analysis set forth in *Freeman, supra,* the board determined that appellant's claims directly recited elements or steps that were themselves calculations, and that they "merely recite[d] an algorithmic procedure or a mathematical exercise . . . ." As to claim 1, the board found that it was directed to determining an optimum number, *i. e.,* the number of regular visits by a business representative to a client over a predetermined period of time, "obtained by calculating in accordance with the equations stated in clauses (a), (b), (c), and (d)," and that further analysis under *Benson* and *Flook* was required. The board then found that the product of the invention claimed in claim 1 was merely a mathematical value, and that "nothing in the claim . . . would be sufficient to transform it into a claim for an invention that merely *uses* an algorithm."

The board found that dependent claims 2–5 and 7–13, involving the same mathematical operations as claim 1, were also "merely directed to a mathematical exercise for producing numbers . . . ." It accordingly held that, in light of *Benson* and *Flook* and this court's most recent interpretations thereof, appellant's invention fell "within a judicially determined category of non-statutory subject matter."

### Issue

The issue is whether appellant's claimed apparatus is a "machine . . . or any new and useful improvement thereof" within the meaning of § 101.

### OPINION

■ Labels are not determinative in § 101 inquiries. "*Benson* applies equally whether an invention is claimed as an apparatus or process, because the form of the claim is often an exercise in drafting." *In re Johnson*, 589 F.2d 1070, 1077, 200 USPQ 199, 206 (Cust. & Pat.App.1978). "Though a claim expressed in 'means for' (functional) terms is said to be an apparatus claim, the subject matter as a whole of that claim may be indistinguishable from that of a method claim drawn to the steps performed by the 'means.'" *In re Freeman*, 573 F.2d at 1247, 197 USPQ at 472. Moreover, that the claimed computing system may be a "machine" within "the ordinary sense of the word," as appellant argues, is irrelevant. The holding in *Benson* "forecloses a purely literal reading of § 101." *Flook*, 437 U.S. at 588–89, 98 S.Ct. at 2525, 198 USPQ at 196; *In re Johnson*, 589 F.2d at 1076, 200 USPQ at 205–06.

Determination of "whether the claim recites a mathematical algorithm, and, if so, whether it preempts the use of the algorithm[,] *In re Noll*, 545 F.2d 141, 148, 191 USPQ 721, 726 (Cust. & Pat.App.1976) [, and an application of] the two-step test in *In re Freeman*, [573 F.2d at 1245, 197 USPQ at 471]" are required in this case.[2] *In re Bradley,* 600 F.2d 807, 813, 202 USPQ 480, 486 (Cust. & Pat.App.1979).

Specific structure is not recited in the claims. Independent claim 1 recites five "means for" performing functions. The first four "means" perform the calculation of a directly recited mathematical formula. The formula corresponding to the first, second, and third means defines a "saturation curve." The formula corresponding to the fourth means defines "a 'minimum sales line' which intersects the saturation curve at a point defined as the 'critical point' . . . ." The fifth means selects an optimum value, defined as being "above the minimum sales line and the saturation curve and as close to the latter as possible . . . ." Because appellant's claims recite an algorithm in the *Benson* sense of the term, they meet step 1 of the *Freeman* test.

---

**2.** The two-step test of *In re Freeman* consists of: (1) determining "whether the claim directly or indirectly recites an 'algorithm' in the *Benson* sense of that term . . . ," and (2) analyzing the claim "to ascertain whether in its entirety it wholly preempts that algorithm." 573 F.2d at 1245, 197 USPQ at 471.

Appellant argues that "even claim 1, the independent claim, does not specify a computing system for computing a single mathematical formula," and that "[t]his is not a straightforward mathematical procedure, because the value selected is *above* the saturation curve, but as close to it as possible, rather than between the two curves." Appellant's argument here is analogous to an argument made in *In re Gelnovatch*, 595 F.2d 32, 37, 201 USPQ 136, 144 (Cust. & Pat.App.1979), and is equally without merit. As was said there: "The type of mathematical computation involved does not determine whether a procedure is statutory or non-statutory." *Id.* at 41, 201 USPQ at 145 (footnote omitted). This court explained: "Appellants' process as a whole comprises a solution technique for a set of equations wherein sets of numbers are computed from other sets of numbers." *Id.* at 41 n.7, 201 USPQ at 145 n.7. Similarly, appellant's claimed invention as a whole comprises each and every means for carrying out a solution technique for a set of equations wherein one number is computed from a set of numbers. Thus, appellant's claims wholly preempt the recited algorithms, *Benson* 409 U.S. at 71–72, 93 S.Ct. 253, 175 USPQ at 676, and meet step 2 of the *Freeman* test.[3]

As admitted by appellant at oral argument, method claims drawn to the *steps* performed by appellant's "means" would be non-statutory and an attempt to claim appellant's algorithms in their application to a model of a sales organization. *Cf. In re Waldbaum*, 559 F.2d 611, 194 USPQ 465 (Cust. & Pat.App.1977) (apparatus claims limited to specific technology and written in "means for" (functional) language held to be, in practical effect, an attempt to patent an algorithm). "[I]f allowance of a method claim is proscribed by *Benson*, it would be anomalous to grant a claim to apparatus encompassing any and every 'means for' practicing that very method." *In re Free-*

man, 573 F.2d at 1247, 197 USPQ at 472 (footnote omitted). That 35 U.S.C. § 112 authorizes the claiming of "means for" performing a function cannot rescue appellant's claims from the requirements of § 101, because § 112 does not authorize the claiming of apparatus entirely in terms of "means for" performing a *non-statutory* method.

*In re Noll, supra*, cited by appellant as an example of apparatus claims being found directed to statutory subject matter, is inapposite. There, claims 2 through 9 recited no algorithm, either directly or indirectly, and claim 10, reciting in "means for" language a calculation "method," did not preempt the method because it included all the apparatus of claim 9, from which it depended. 545 F.2d at 148, 191 USPQ at 726. *In re Freeman*, 573 F.2d at 1247 n.11, 197 USPQ at 472 n.11.

The limitations added by the present dependent claims do not change the non-statutory nature of appellant's invention. Like claim 1, allowance of claims 2–5 and 7–13 would result in a patent on the algorithms.

The decision of the board is *affirmed*.

*AFFIRMED.*

---

3. A computer or other apparatus which "as a whole comprises means for carrying out a solution technique . . . ." does not necessarily constitute nonstatutory subject matter. If a claim thereto does not recite a mathematical formula, step 2 of the *Freeman* test is not reached. *In re Freeman*, 573 F.2d at 1247, 197 USPQ at 472. If a mathematical formula is recited, specific structure recited in the claim may render step 2 unmet. *Id.* at 1247 n. 10, 197 USPQ at 472 n. 10.